IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES A. PEARSON, #182691          )
                                     )
          Plaintiff,                 )          CV No. 2:06-CV-828-MEF
                                     )
ELLEN BROOKS, et al.,                )
                                     )
          Defendants.                )

WRITTEN REPORT AND ANSWER
OF DEFENDANTS, K.L. BYRD & C.G. GRUHN,
TO PLAINTIFF'S COMPLAINT

COME NOW the Defendants, K.L. Byrd ("Byrd") and C.G. Gruhn ("Gruhn"), by and through undersigned counsel and, in accordance with this Court's Orders of September 20, 2006 and September 26, 2006, submit the following Written Report and Answer to Plaintiff's Complaint and Amended Complaint:

I. PROCEDURAL BACKGROUND

Plaintiff Charles A. Pearson ("Pearson") was arrested on October 3, 2005. Pearson was indicted on January 20, 2006 for theft of property in the first degree, receiving stolen property in the second degree and two counts of assault in the second degree. *(DX 1, Certified Copy of Case Action Summary: State of Alabama v. Charles Pearson, In the Circuit Court of Montgomery, Alabama, Case No. CC 2006-132).* Pearson was convicted on June 29, 2006 in the Circuit Court of Montgomery County for receiving stolen property in the second degree and assault in the second degree regarding Sergeant Byrd. *(DX 1, Certified Copy of Case Action Summary: State of Alabama v. Charles Pearson, In the Circuit Court of Montgomery, Alabama, Case No. CC 2006-132).*

On September 15, 2006, Pearson filed a three count Complaint and named as Defendants: District Attorney Ellen Brooks, Deputy District Attorney Scott Green and two detectives with the Montgomery Police Department, K. L. Byrd and C.G. Gruhn. Count One of the Complaint alleges an illegal arrest on October 3, 2005, by Detectives Byrd and Gruhn. Count Two alleges a claim against the state for malicious prosecution that occurred on June 28, 2006. Count Three alleges imposition of an illegal sentence on July 27, 2006. Pearson requests monetary damages, a declaratory judgment and injunctive relief.

On September 20, 2006, the Court entered a Report and Recommendation that (1) dismissed the § 1983 claims presented against Ellen Brooks and Scott Green with prejudice in accordance with the directives of 28 U.S.C. § 1915(e)(2)(B)(i) and (iii); (2) dismissed the plaintiff's challenge to the constitutionality of the conviction and sentence imposed upon him by the Circuit Court of Montgomery County, Alabama without prejudice pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii) and (3) dismissed the case prior to service of process in accordance with the directives of 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and (iii).

On September 26, 2006, the Court granted Pearson an extension to file objections to the Report and Recommendation and also substituted page 6 of the previous Order to reflect that rather than dismiss the case prior to service of process as indicated in paragraph #3 of the Order entered on September 20, 2006 that the case with respect to the plaintiff's illegal arrest claim against defendants Byrd and Gruhn be referred back to the Magistrate Judge for additional proceedings. Additionally on September 26, 2006, the Court allowed Pearson to amend his Complaint and assert additional claims for relief against Defendants Byrd and Gruhn but denied the motion to the extent that Plaintiff was trying to add Sgt. Johnson as an additional defendant.

The remaining claim in the Complaint against Defendants Byrd and Gruhn is for unlawful arrest.  In the Amended Complaint, Plaintiff has alleged that Defendants Byrd and Gruhn violated his rights pursuant to the "Eighth and Fourteenth Amendment(s) of the U.S. Constitution cruel and unusual punishment, due process and equal protection of the law." Plaintiff also claims additional relief for the Montgomery Police Department to change their policies concerning use of force, appointment of counsel, trial by jury and punitive, compensatory and other monetary damages.

## II.   FACTS

On Monday, October 3, 2005, Detective Guy Naquin was conducting a follow up of a death investigation and was driving west on Day Street just west of the intersection of Oak and Day Street.  *(DX 2, Naquin Affidavit)*. Detective Naquin observed a brown, four door vehicle proceed through the red light at an extremely high rate of speed. *(DX 2, Naquin Affidavit)*. The vehicle was driven by a black male with a black female occupant. *(DX 2, Naquin Affidavit)*. Detective Naquin observed the female hanging halfway out the window holding a beer can in her hand. *(DX 2, Naquin Affidavit)*. Detective Naquin attempted to clear the intersection, but the vehicle had already traveled to the intersection of Day Street and Mobile Street.  *(DX 2, Naquin Affidavit)*. Detective Naquin observed the vehicle proceed through a stop sign sliding sideways, and proceeding North on Mobile Street and out of sight. *(DX 2, Naquin Affidavit)*.

Shortly thereafter Detective Naquin heard patrol units being dispatched to the 600 block of Mildred Street to assist a Fire Department Officer.  *(DX 2, Naquin Affidavit)* .Detective Naquin proceeded to the scene and observed the brown car that he had previously seen in a parking area behind Old Michelle's Club at the intersection of Mobile and Mildred Street.  *(DX 2, Naquin Affidavit)*.

Detective Naquin arrived at the scene and saw District Fire Chief Kenneth Bolling. *(DX 2, Naquin Affidavit and DX 3, Bolling Affidavit).* Chief Bolling advised that he had left Fire Station #2 located at 405 South Holt Street, in route to Fire Station #10 located at 1931 Rosa L. Parks Avenue. *(DX 3, Bolling Affidavit).* As Chief Bolling the approached the store that sits near the intersection of Mobile and Mildred Street he saw a brown vehicle that looked as if it were out of control and was going to hit him head on. *(DX 3, Bolling Affidavit).* Chief Bolling turned his vehicle around and approached the vehicle that had stopped a few feet away. *(DX 3, Bolling Affidavit).*

Chief Bolling witnessed a black male who was driving with a tire iron up on the steering wheel trying to get the car started. *(DX 3, Bolling Affidavit).* Chief Bolling asked the subject and his passenger if they were okay. The female passenger shook her head as if she was responding, no, that everything was not okay. *(DX 3, Bolling Affidavit).* Based on the female's behavior, Chief Bolling used his radio to request a police unit meet him in the 600 block of Mildred Street. *(DX 3, Bolling Affidavit).*

Detective Naquin and a patrol officer that had arrived attempted to question the subject but he resisted. *(DX 2, Naquin Affidavit).* The officer and Detective Naquin asked the subject to identify himself. *(DX 2, Naquin Affidavit).* The subject advised that he did not have any identification and became violent. *(DX 2, Naquin Affidavit and DX 3, Bolling Affidavit).* He began yelling and beating on the rear trunk of the patrol unit. *(DX 2, Naquin Affidavit and DX 3, Bolling Affidavit).*

A crowd began to surround the officers and the officers made numerous attempts to get the crowd to move away from the scene. At that time, the officers were able to determine the identity of the subject as Charles Anthony Pearson (Plaintiff "Pearson"). *(DX 2, Naquin Affidavit).* An additional patrol unit and Detective B.F. Harrison arrived on the scene. *(DX 2, Naquin Affidavit; DX 3, Bolling Affidavit and DX 7, Harrison Affidavit).* Pearson continued to yell at the officers stating

that he was not going to jail and that he would kill officers. *(DX 2, Naquin Affidavit and DX 3, Bolling Affidavit).*

Detective Naquin radioed for another patrol unit that had officers with a taser. *(DX 2, Naquin Affidavit).* When the patrol officers arrived they ordered Pearson to place his hands behind his back. *(DX 2, Naquin Affidavit; DX 4, Corkran Affidavit and DX 5, Reardon Affidavit).* Pearson took an aggressive posture and officers attempted to grab and handcuff him. *(DX 4, Corkran Affidavit; DX 5, Reardon Affidavit and DX 6, Johnson Affidavit).* Pearson pulled away and Corporal Corkran deployed his taser gun. *(DX 2, Naquin Affidavit; DX 4, Corkran Affidavit; DX 5, Reardon Affidavit and DX 6, Johnson Affidavit).* Pearson fell to the ground but continued to resist and had to be tased again. Pearson complied and the officers were able to place the handcuffs on him. *(DX 2, Naquin Affidavit; DX 4, Corkran Affidavit; DX 5, Reardon Affidavit and DX 6, Johnson Affidavit).*

As the officers attempted to place Pearson in the patrol car, he began to scream, holler, spit and kick at the officers. *(DX 2, Naquin Affidavit; DX 4, Corkran Affidavit; DX 5, Reardon Affidavit and DX 6, Johnson Affidavit).* Pearson had to be drive stunned again to get him to stop fighting the officers and get him inside of the vehicle and his feet shackled. *(DX 2, Naquin Affidavit; DX 4, Corkran Affidavit; DX 5, Reardon Affidavit and DX 6, Johnson Affidavit).*

Detective Harrison radioed Sergeant Byrd at the Montgomery Police Department's Detective Division and advised that Pearson had been stopped in possession of a stolen vehicle. *(DX 7, Harrison Affidavit and DX 8, Byrd Affidavit).* Harrison advised Byrd that he was being transported to Headquarters. *(DX 7, Harrison Affidavit and DX 8, Byrd Affidavit).* Harrison advised Byrd that Pearson was still irate and they should have back up units available at Headquarters. *(DX 7, Harrison Affidavit and DX 8, Byrd Affidavit).*

Pearson arrived at the Headquarters of the Montgomery Police Department and continued to scream at officers as he was taken Byrd's office in the Detective Division. *(DX 4, Corkran Affidavit;*

DX 5, Reardon Affidavit; DX 7, Byrd Affidavit). Gruhn heard Pearson as they were taking him into the Detective Division and saw Byrd and went to help Byrd. (DX 8, Gruhn Affidavit).

The patrol supervisor had previously asked Byrd to get photos for the taser report of Pearson's body where he had been tased. (DX 7, Byrd Affidavit). Pearson continued being irate and aggressive to the patrol officers while in Byrd's office. Byrd and Gruhn asked the patrol officers to leave the room since it seemed that Pearson's anger was directed at them. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit).

Detective Gruhn came in Byrd's office to assist in getting pictures of Pearson for the taser package. (DX 8, Gruhn Affidavit). Pearson was advised that they needed to take pictures of his body where he had been tased. Pearson stated that he was not going to allow anyone to take pictures of him. (DX 7, Byrd Affidavit). Sergeant Byrd lifted his shirt and Detective Gruhn stepped in front of him to take a picture. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit). As Sergeant Byrd lifted his shirt, Pearson bit down on his right middle finger and would not release his bite. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit). In an effort to get Pearson to release his bite, Sergeant Byrd struck him in the left side of his head with his left forearm. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit). Pearson released his bite, but shoulder lunged at Detective Gruhn and pushed him against the door. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit). Pearson began kicking toward Detective Gruhn and kicked him hard in the right knee. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit). Byrd and Gruhn got Pearson to the ground. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit). Other officers then came into Byrd's office and removed Pearson. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit). Gruhn received medical treatment from the medics and was sent to the emergency room. (DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit).

6

### III.    PLAINTIFF'S CLAIMS AGAINST BYRD AND GRUHN

As previously set forth, the remaining allegation in the original Complaint is in Ground One and is a claim for "illegal arrest" by Byrd and Gruhn. In his Amended Complaint, Pearson alleges violation of his Eighth and Fourteenth Amendment and cites cruel and unusual punishment, due process and equal protection of the law. Pearson also uses the term of excessive force in his Amended Complaint regarding force used at the scene where he was originally detained for driving a stolen vehicle. Given the facts alleged by the Pearson, it appears that his remaining claims against Byrd and Gruhn are for unlawful arrest and excessive force in violation of his Fourth Amendment rights as incorporated by the Due Process Clause of the Fourteenth Amendment.

#### A. UNLAWFUL ARREST

It is well established that a claim pursuant to 42 U.S.C. § 1983 may lie for a Fourth Amendment violation where a plaintiff is arrested and detained incident thereto where such "seizure" is "unreasonable" in that it is neither pursuant to a warrant nor supported by probable cause. *See Ortega,* 85 F.3d at 1526; *Marx v. Gumbinner,* 905 F.2d 1503, 1505-06 (11th Cir.1990); *Reeves v. City of Jackson,* 608 F.2d 644, 650 (5th Cir.1979).

Pearson does not assert with specificity what Byrd or Gruhn did to cause him to be unlawfully arrested. Pearson does not make any claims against Byrd and Gruhn regarding the stop made by police when Pearson was originally detained for driving a stolen vehicle. Although Byrd was ultimately responsible for processing the Affidavit and Complaint to secure the warrants, he was not the arresting officer. It is undisputed that neither Byrd nor Gruhn had contact with Pearson until he arrived at Headquarters to be processed on the theft of property charge for the stolen vehicle. *(DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit).*

7

In the present case, it is clear that Pearson cannot succeed on a claim of unlawful arrest. Probable cause existed to arrest Pearson. The existence of probable cause is an absolute bar to a section 1983 action for false arrest. In order for probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances," *Bailey v. Board of County Com'rs of Alachua County, Fla., 956 F.2d 1112, 1119 (11th Cir.1992),* and an officer's subjective intentions and beliefs play no role in determining the existence of probable cause. *See Rankin v. Evans,* 133 F.3d 1425, 1433-34 (11th Cir. 1998). A "law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge ... would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Bailey* at 1120 (quoting *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir.1990)) (Emphasis added). Probable cause to arrest thus requires something more than "mere suspicion," *Mallory v. United States,* 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). However probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.

It is clear from the evidence that probable cause existed for the arrest of Pearson. Pearson was stopped while driving and in the possession of a stolen vehicle. Pearson was convicted on June 29, 2006 in the Circuit Court of Montgomery County for receiving stolen property in the second degree and assault in the second degree regarding Sergeant Byrd. *(DX 1, Certified Copy of Case Action Summary: State of Alabama v. Charles Pearson, In the Circuit Court of Montgomery, Alabama, Case No. CC 2006-132).*

## B.   USE OF EXCESSIVE FORCE

When an excessive force case arises in the context of an arrest or investigatory stop, it is considered in the context of the Fourth Amendment's guarantee against unreasonable seizures.

*Graham v. Conner*, 490 U.S. 386, 394 (1989)(holding that excessive force claims are properly analyzed under the Fourth Amendment and not under the substantive due process standard). The Fourth Amendment's "objective reasonableness" standard is applied, which requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 395-396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

> The question the court must answer is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent." [*Graham*, 490 U.S. at 397]. The Supreme Court's Fourth Amendment jurisprudence has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Consequently, the proper application of the "objective reasonableness" test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Furthermore, the reasonableness of the force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. The court must allow for the fact that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving..." *Id.* at 397.

Pearson was tased by officers prior to being transported to headquarters. *(DX 2, Naquin Affidavit; DX 3, Bolling Affidavit; DX 4, Corkran Affidavit; DX 5, Reardon Affidavit; DX 6, Johnson Affidavit and DX 7, Harrison Affidavit).* As evidenced by the sworn testimony of those present when Pearson was arrested on October 3rd, Plaintiff was aggressive and irate and appeared to be violent and threatened to kill officers. *(DX 2, Naquin Affidavit; DX 3, Bolling Affidavit; DX 4, Corkran Affidavit; DX 5, Reardon Affidavit; DX 6, Johnson Affidavit and DX 7, Harrison Affidavit).* There was a crowd beginning to form around the officers and a man hollering at the officers. *(DX 3, Bolling Affidavit).* The man that had been yelling then walked directly behind

the officer while he was trying to get the male subject to put his hands on the car. *(DX 3, Bolling Affidavit)*. Therefore, the officers present were concerned for their safety and the citizens present.

Furthermore as evidenced from the patrol car camera, Pearson continued to be visibly enraged and yelled at the officers and banged his head against the back glass while being transported to headquarters. *(DX 2, Naquin Affidavit; DX 3, Bolling Affidavit; DX 4, Corkran Affidavit; DX 5, Reardon Affidavit; DX 6, Johnson Affidavit and DX 7, Harrison Affidavit)*.

As previously stated, it is undisputed that neither Byrd nor Gruhn had contact with Pearson until he was transported to Headquarters. *(DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit)*. Pearson had no contact with Pearson after he was removed from Byrd's office to be taken to the City Jail. *(DX 7, Byrd Affidavit and DX 8, Gruhn Affidavit)*.

After arriving at Headquarters, Pearson continued to by aggressive. When Byrd and Gruhn attempted to take pictures of his body to document the taser report, Pearson bit Detective Byrd on the finger. When Detective Gruhn tried to help Byrd, Pearson charged Gruhn with a shoulder lunge and ultimately kicked Gruhn in the knee. *(DX 8, Byrd Affidavit and DX 9, Gruhn Affidavit)*. Gruhn required medical treatment. *(DX 9, Gruhn Affidavit)*. Pearson was subsequently charged with two counts of Assault in the 2nd Degree.

To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11 Cir. 2001). The court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). When balancing the necessity of using some force against an arrested person's constitutional rights, a

variety of factors are considered, "including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Thus, the force used by a police officer during the course of an arrest "must be reasonably

proportionate to the need for that force, which is measured by the severity of the crime, the

danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11 Cir.

2002).

All of the officers involved in the arrest and detainment of Pearson were amply

justified under these circumstances in using force and the amount of force used to protect

themselves and citizens in the area in trying to restore discipline and control to the situation.

Byrd and Gruhn certainly did not tase Pearson.  Pearson initiated the contact and bit Byrd and

then charged Gruhn forcing him against the door.  Byrd and Gruhn were trying to protect

themselves and did not do anything to Pearson to intentionally harm him.  Rather Byrd and

Gruhn were merely trying to protect themselves.   From the time Pearson was stopped by the

officers until the time he was booked into the City Jail, Pearson was aggressive and enraged

toward the officers that approached him.

Finally, the Eleventh Circuit has "established the principal that the application of de

minimis force, without more, will not support a claim for excessive force in violation of the

Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).   Additionally, the

Eleventh Circuit continues to analyze Fourth Amendment claims of excessive force in terms of

whether the injuries sustained and the amount of force applied indicate that the force was

excessive.  *Ruby v. Baptist Medical Center*, 21 F.Supp.2d 1341, 1350 (M.D. Ala. 1998)(citing

*Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997); *Robinson v. Brown*, 987 F.Supp. 1470 (S.D. Fla. 1997).

### C.    QUALIFIED IMMUNITY

Additionally, based on the above, Byrd and Gruhn are entitled to the affirmative defense of qualified immunity for allegations of constitutional violations pursuant to 42 U.S.C. § 1983 against Defendants sued in their individual capacities.    *See Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir.1998).  It is obvious, from the facts and the allegations made by the Pearson that the officers were at all times acting within the line and scope of their duty performing discretionary acts.

"Alabama law has defined 'discretionary acts' as ' "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take" and those requiring "exercise in judgment and choice and [involving] what is just and proper under the circumstances." *Williams v. Crook*, 741 So.2d 1074, 1076 (Ala.1999) *citing* Blacks Law Dictionary 467 (6[th] ed.1990).

Qualified immunity is an affirmative defense to an action pursuant to § 1983 against a government official sued in his or her individual capacity. *See Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir.1998).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In order to receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002). As alleged by Pearson in the present case, it is undisputed that all of the officers were acting in their capacity as police officers therefore satisfying the first prong of the qualified immunity test. Having established the first requirement, the burden shifts to the Plaintiff to prove that qualified immunity is not warranted. *Id.* First "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Sammons v. Taylor*, 967 F. 2d 1533, 1539 (11th Cir. 1992). "Then the burden shifts to the plaintiff to demonstrate that the defendant 'violated clearly established constitutional law.'" *Id.*

Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that the federal "rights" allegedly violated were "clearly established." *Barts v. Joyner*, 865 F. 2d 1187, 1190 (11th Cir. 1989), citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985). For the law to be clearly established to the point that qualified immunity does not apply, it must have earlier been developed in such a concrete and factually defined contest as to make it obvious to all reasonable government actors, in the defendant's place that "what he is doing" violated federal law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 523 (1987).

"For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel... the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates Federal law in the circumstances." *Lassiter v. Alabama A & M University*, 28 F. 3d 1146, 1150 (11th Cir. 1994) (emphasis in original).

Also, the Eleventh Circuit has held, "When the qualified immunity defense has been raised, an opposing plaintiff must convince the court that the law clearly established that 'the defendant's conduct in the circumstances amounted to 'deliberate indifference.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1185 (11th Cir. 1994) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989)).

Byrd and Gruhn are entitled to qualified immunity on Pearson's claims for unlawful arrest and excessive force. Probable cause to arrest Plaintiff and charge him with Theft of property existed. As previously set out, the officers were clearly justified under the circumstances in using force and justified in the amount of force used to protect themselves and citizens in the area in trying to restore discipline and control to the situation. From the time Plaintiff was stopped by the officers until the time he was processed into the City Jail, Plaintiff was aggressive and enraged toward the officers that approached him.

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants deny that all claims of  set forth Plaintiff's Complaint and Amended Complaint and.

### FIRST AFFIRMATIVE DEFENSE

Defendants assert that the Complaint fails to state any cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendants deny that Plaintiff is entitled to any relief and that Defendants are

entitled to dismissal of all claims.

## THIRD AFFIRMATIVE DEFENSE

Defendants plead qualified immunity and discretionary function immunity.

## FOURTH AFFIRMATIVE DEFENSE

Defendants deny all material allegations not specifically admitted and demands strict proof thereof. Defendants plead as that the Complaint is insufficient to apprise Defendants of the civil crimes or wrongs for which the Plaintiff seeks damages such that the Defendants cannot properly and reasonably defend themselves.

## FIFTH AFFIRMATIVE DEFENSE

Defendants deny that they have violated Plaintiff's constitutional rights and assert that Plaintiff has failed to state injuries or damages caused by Defendants.

## SIXTH AFFIRMATIVE DEFENSE

Defendants plead the general issue.

## SEVENTH AFFIRMATIVE DEFENSE

Defendants plead insufficiency of process.

## EIGHTH AFFIRMATIVE DEFENSE

Defendants assert that Plaintiff was guilty of negligence, wantonness, recklessness and intentional acts or criminal acts which proximately caused or contributed to the injuries or damages he claims.

## NINTH AFFIRMATIVE DEFENSE

Defendant asserts that the claims made by Plaintiff against the Defendant is completely without merit and should be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e) (2) (B) (i).

## TENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff's allegations of injury are, if any, of *de minimus* injury.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent applicable, Defendants plead statute of limitation, estoppel, waiver and laches.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants aver that fictitious party practice is not permitted under the Federal Rules of Civil Procedure. *New v Sports & Recreation, Inc.*, 114 F. 3d 1092, 1094 n.1 (11th Cir 1997); *Edwards v Alabama Department of Corrections*, 81 f. Supp. 2d 1242, 1257 (M.D. Ala. 2000).

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendants deny that Plaintiff is entitled to any monetary damages. Defendants assert that Plaintiff is not entitled to punitive damages and that the award of punitive damages would violate the Fourth, Fifth, Sixth, Eleventh and Fourteenth Amendments of the Constitution of the United States and Article 1 §§ 6, 10, 11, 15, 22, 35, 36 and 43 of the Constitution of Alabama (1901).

## RESERVATION OF DEFENSES

Defendants reserve the right to amend these affirmative defenses as allowed by the Court.

Respectfully submitted this the 6th day of November, 2006.

Kimberly O. Fehl (FEH001)
Attorney for Defendants

**OF COUNSEL:**
**City of Montgomery**
**Legal Department**
103 N. Perry St.

Montgomery, AL 36104
(334) 241-2050
(334) 241-2310 - facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by causing it to be placed in the U.S. Mail, postage prepaid and properly addressed on this _6th_ day of November, 2006 to the following:

Charles A. Pearson, Jr.
18269 (G-1-A-111)
St. Clair Correctional Facility
100 St. Clair Road
Springville, AL  35146-5582

OF COUNSEL

```
ACRO372          ALABAMA JUDICIAL INFORMATION SYSTEM     CASE: CC 2006 000132.
OPER: REG                CASE ACTION SUMMARY
PAGE:   1                CIRCUIT   CRIMINAL                RUN DATE: 01/24/20
```

IN THE CIRCUIT COURT OF MONTGOMERY                                    JUDGE: T

STATE  OF  ALABAMA                VS        PEARSON CHARLES
                                           537 COBB STREET
CASE: CC 2006 000132.00
                                           MONTGOMERY, AL  36104 0000

DOB: 11/24/1969        SEX: M  RACE: B  HT: 5 06   WT: 200    HR: BLK  EYES: BR
SSN: 420064383  ALIAS NAMES: PEARSON AARON                BERNARD TONNY

CHARGE01: THEFT OF PROP 1ST      CODE01: TOP1  LIT: THEFT OF PROP   TYP: F #: 00
CHARGE02: REC STOLEN PROP 2ND    CODE02: RSP2                       TYP: F #: 00
CHARGE03: ASSAULT 2ND DEGREE     CODE03: ASS2                       TYP: F #: 00
CHARGE04: ASSAULT 2ND DEGREE     CODE04: ASS2                       TYP: F #: 00
OFFENSE DATE: 10/02/2005         AGENCY/OFFICER: 0030100

DATE WAR/CAP ISS:                DATE ARRESTED: 10/03/2005
DATE    INDICTED: 01/20/2006     DATE   FILED: 01/24/2006
DATE    RELEASED:                DATE   HEARING:
BOND       AMOUNT: $201000.00       SURETIES:

DATE 1:              DESC:          TIME: 0000
DATE 2: 02/09/2006   DESC: ARRG     TIME: 0200 P

TRACKING NOS: GJ 2006 010014 00   /

    DEF/ATY:                      TYPE:                         TYPE:

                        00000                         00000

PROSECUTOR:

```
OTH CSE: GJ200601001400 CHK/TICKET NO: S         GRAND JURY: 14
COURT REPORTER:              SID NO:        001097297
DEF STATUS: JAIL            DEMAND:                       OPER: REG
```

DATE        ACTIONS, JUDGEMENTS, AND NOTES

2/9/06    Def appeared for arraignment and pled not guilty. The Hon. Douglas Freeman is apptd. as Counsel. States is set for March 23, 2006 @ 8:00 a Trial is set for April 7, 2006 @ 9:00 a.m

3-14-06   Court considers & hears on the State's motion to have def's bond ... Court ... the def's bond to $100,00

3-17-06  ✓ Order Grant mo For Extra Expenses

DEFENDANT'S
EXHIBIT
1

ACR0369  A L A B A M A    J U D I C I A L    I N F O R M A T I O N    C E N T E

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2006 000132.0
JUDGE ID:  TSM

STATE  OF  ALABAMA                    VS      PEARSON CHARLES

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 10 MAR 06 | Order granting D's motion for Extraordinary Expense / |
| 6-27-06 | *Deff W/A & pled not guilty* |

| State of Alabama<br>Unified Judicial System<br>Rev. 8/01 | **CASE ACTION SUMMARY**<br>**CONTINUATION** | Case Number<br>06-132<br>CC - |
|---|---|---|

Style:

CHARLES PEARSON

**STATE OF ALABAMA  v.** _____

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 6/29/06 | ORDERED, comes now a jury of David Robinson, foreperson, and 11 others being impaneled and sworn according to law, upon their oaths do say: We, the Jury, find the defendant guilty of Receiving Stolen Property in the second degree AND, we the jury find the defendant guilty of Assault in the second degree regarding Det. K. L. Byrd.   We, the Jury, find the defendant not guilty of Assault in the second degree regarding Det. C.G. Gruhn. |
| | It is ORDERED in accordance with the verdict of the Jury, that the defendant is adjudged guilty of Receiving Stolen Property in the second degree and guilty of Assault in the second degree regarding Det. K.L. Byrd and sentencing is set for July 27, 2006 at 8:00 a.m.  The defendant is adjudged not guilty of Assault in the second degree regarding Det. C.G. Gruhn. |
| | DONE and ORDERED this the 29th day of June, 2006. |
| | TRACY S. McCOOEY<br>CIRCUIT JUDGE |
| | *The jury also [found] def. not guilty of [illegible]* |

| State of Alabama<br>Unified Judicial System | CASE ACTION SUMMARY (CONTINUATION)<br>SENTENCING ORDER | Case Number<br>CC - *06-13* |
|---|---|---|

STATE OF ALABAMA v. *Charles Pearson*                Page No. _____ of _____

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|

*7-27-06*
*Rec'd*
*7-31-06*
*Comp*
*Comp* ✓

### Sentencing Order

The defendant and counsel, and counsel for the State of Alabama, appeared in open court for the defendant to be sentenced on his/her conviction of *Rob II & Ass II*

### Habitual Felony Offender

The defendant has been given reasonable notice that the State intended to move the Court to sentence the the defendant under the provisions of --- 13A-5-9 and 10, Code of Alabama. 1975.

The State's motion to sentence the defendant pursuant to the Habitual Felony Offender Act is _____ granted; _____ denied. The Court finds the defendant has __X__ prior conviction

*3 priors*

### Sentence

_____ The defendant waived a sentencing hearing.
_____ The Court conducted a sentencing hearing.
_____ A pre-sentence report was requested by the defendant and considered by the Court.
_____ The defendant waived a pre-sentence investigation and report.
_____ The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her, and: _____ the defendant having had his/her say; _____ the defendant had nothing to say, it is ORDERED as follows:
_____ The defendant is sentenced to the custody of the Commissioner of the Department of Corrections for a period of: _____ year(s), and _____ month(s), _____ day(s); _____ his/her life; _____ *(as to 15 yrs)*
_____ The defendant is sentenced to the custody of the Sheriff of Montgomery County, Alabama, for a period of: _____ year(s), _____ month(s), _____ day(s).
_____ The defendant is sentenced to the custody of the Warden of the Montgomery City Jail for a period of: _____ year(s), _____ month(s), _____ days(s).
_____ The defendant is fined the sum of $_____
_____ The defendant is fined the sum of $_____ for the Mandatory Drug Demand Reduction Assessment Act Fine.
_____ Defendant's Driver's License is suspended for a period of _____
_____ Y.O.A.
_____ Frank Lee Youth Center is recommended.
_____ The court in this sentence shall run concurrent with the sentence(s) imposed in *with case consecutive to*
_____ The defendant shall pay restitution in the amount of $ *40320*
_____ The defendant shall pay the costs of this case. *@ $100/mnt*
_____ The defendant shall pay the Alabama Crime Victims Compensation Commission, the sum of $_____
_____ The defendant shall pay $100.00 fine to the Department of Forensic Sciences.
_____ One-half of all monies earned by the defendant while in the Department of Corrections shall be withheld t pay Court-Ordered monies.
_____ The defendant shall reimburse the State of Alabama the costs of his/her appointed counsel in the amount of $_____
_____ The payment of Court-ordered monies shall be a condition of parole, early release, S.I.R., or work release.
_____ The defendant was advised of his/her rights of appeal.

ACRO369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2006 000132.00
JUDGE ID:   TSM

STATE   OF   ALABAMA                    VS    PEARSON CHARLES

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|------------------------------|
| 07-28-06 | Notice of Appeal w/out Forms |
| 07-28-06 | Mo. To Withdraw As Counsel (Doug Freeman) |
| 07-28-06 | Petition For Transcript & Appointment of Counsel |
| 08-10-06 | Clerk's Notice of Appeal to Crm Appls, AG, DA, Court Reporters & Def. Atty (Freeman) w/ Forms |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES A. PEARSON, #182691        )
                                   )
        Plaintiff,                 )        CV No. 2:06-CV-828-MEF
                                   )
ELLEN BROOKS, et al.,              )
                                   )
        Defendants.                )

## AFFIDAVIT OF DETECTIVE GUY NAQUIN

STATE OF ALABAMA          )

COUNTY OF MONTGOMERY      )

Before me, a Notary Public in and for said State and County, personally appeared Guy Naquin and, after first being duly sworn by me, did depose and state as follows:

My name is Guy Naquin and I am over nineteen (19) years of age. I am currently employed as a Detective with the Montgomery Police Department.

On October 3, 2005, I was conducting a follow up of a death investigation and driving west on Day St. just west of the intersection of Oak and Day Street. At that time I observed a brown, four door, vehicle proceed east on Day St. at an extremely high rate of speed. The vehicle was driven by a black male with a black female occupant. The female was observed hanging halfway out the window holding a beer can in her hand. The vehicle ran through the stop sign at the intersection of Day Street and Mobile Street sliding sideways with the brakes locked up. The vehicle then proceed North on Mobile Street and out of sight.

As I proceeded toward the direction the vehicle traveled, I heard patrol units being dispatched to the 600 block of Mildred Street to assist a Fire Department Officer. I proceeded to the scene and upon arrival I observed the brown car previously seen, in a parking area behind the Old Michelle's Club at the intersection of Mobile and Mildred Street.



DEFENDANT'S EXHIBIT 2

District Fire Chief Kenneth Bolling from Station #2 of Montgomery Fire Department, which is down the block from the Police Academy, was present and also a patrol officer. I approached the brown vehicle and immediately observed through the open driver side window that the steering column had been popped. I then ran the license plate of the vehicle through the computer system and found that it was reported as a stolen vehicle from the previous night.

The black male occupant that I had previously observed driving the vehicle was a short distance down the street walking past the patrol officer. At this time Chief Bolling advised that the vehicle ran a stop sign at Mobile and Mildred Street and then turned onto Mildred Street at a high rate of speed and almost hit him in a head-on collision.

The patrol officer and I attempted to question the subject. The patrol officer asked for his identification and driver's license. The subject advised he did not have any and began to become violent. He began yelling that he was an ex-felon, that he just got out of prison and did not have a driver's license and began beating on the rear trunk of the patrol vehicle. A large crowd subsequently gathered around us as this occurred and we were able to obtain personal information on the subject at this time. The subject was Charles Anthony Pearson.

Detective B. F. Harrison also arrived at the scene and another patrol unit. Pearson kept yelling that he was not going to jail and he would kill officers and no one was taking him to jail because he had just gotten out of prison. We attempted to explain to him that he had just exited the driver's seat of a stolen vehicle and that he would have to go to police headquarters. Pearson again began beating on the trunk of the patrol car stating that he would kill officers and that no one was going to take him to jail.

At this time, I radioed for another patrol unit with a stun gun, who responded to the scene. When those officers arrived they ordered Pearson to place his hands behind his back. Pearson refused and took an aggressive posture. Sergeant E.L. Johnson and other officers

attempted to grab and handcuff him.  Pearson pulled away and was then shot with a taser gun.

Pearson fell to the ground, continued to resist, and had to be tased again.  He finally complied, by placing his hands behind his back, and was taken into custody.  The other officers attempted to place him in the back of the patrol unit while yelling. Pearson kicked and spit at officers and had to be drive stunned several times to get his feet shackled and inside the patrol vehicle.  Once inside the patrol vehicle, he immediately began banging his head against the cage of the car.

I have read the above and foregoing affidavit consisting in total of three (3) pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

Detective Guy Naquin

**SWORN to and SUBSCRIBED before me this the** 10th **day of November,** 2006.

Notary Public
My commission expires  10/16/09

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLES A. PEARSON, #182691    )
                          )
      Plaintiff,            )    CV No. 2:06-CV-828-MEF
                          )
ELLEN BROOKS, et al.,        )
                          )
      Defendants.          )

## AFFIDAVIT OF DISTRICT FIRE CHIEF KENNETH BOLLING

STATE OF ALABAMA        )

COUNTY OF MONTGOMERY    )

Before me, a Notary Public in and for said State and County, personally appeared Kenneth Bolling and, after first being duly sworn by me, did depose and state as follows:

My name is Kenneth Bolling and I am over nineteen (19) years of age. I am currently employed as a District Chief with the Montgomery Fire Department. I am assigned to Station #2 located on Mildred Street, in Montgomery, Alabama.

On the date of October 3, 2005, I had just left Fire Station #2 en route to Fire Station #10. As I approached the intersection of Mobile and Mildred Street, I could hear brakes squealing. I saw a brown vehicle with a black male and a black female inside and they slid through the stop sign and turned toward me. It looked like the car was out of control and it was going to hit me head on. The car went around me and to the left toward the fire station. I saw that the car had stopped a few feet away from me. I turned my vehicle around and I approached their vehicle, which was in the middle of the street. I rolled my window down, and witnessed the black male who was driving with a tire iron up on the steering wheel trying to get the car started. I asked him if he was okay and he said that he had run out of gas. The female that was on the passenger side was looking at me shaking her head no that everything



was not alright. Based on the female's behavior, I used my radio to request a police unit meet me in the 600 block of Mildred Street.

While I was on the radio and waiting for the police to arrive, the male subject and another gentleman pushed the car down the street into a parking lot. The parking lot was behind what used to be Michelle's Club. When the police unit arrived and asked me what had happened, the female got out of the vehicle and walked across the street. I noticed that she had a beer in her hand and threw it down. In addition, I noticed a strong smell of alcohol on the driver, but never witnessed him drinking.

The officer asked the male if he was driving that vehicle and he replied yes. When the officer asked him for his name, he went crazy and started beating on the hood of the police car. He said that he had just gotten out of prison and he didn't want to give out his name. Further he said that he was an ex-felon, who had just gotten out of jail a short time ago. The officers continued to ask him for his name and the male subject got real angry.

I saw him kind of lose it and then he started saying that nobody was going to take him to jail. The black male subject then looked at me and began to call me names using racial slurs. At that time one officer requested another unit to come with a taser. There was a crowd beginning to form around the officers and there was a man hollering something about a cell phone number to call. The man that had been yelling then walked directly behind the officer, while he was trying to get the male subject to put his hands on the car. The officers kept telling the subject to calm down, keep his hands on the car and that they just wanted to ask him some questions.

When Pearson heard the police officers say the vehicle was stolen, he lost it again, started beating on the car and saying it was his friend's car. I became concerned with the crowd and called for Fire Unit 57, which is the back up unit for the Fire Department that has arresting powers.

At this time the police unit arrived with the taser. The crowd began to yell negative statements at the officers, although there were a few people that told him to listen to the officers. It was several minutes before the officer used his taser. They were trying to allow him as much time as possible to calm down and listen to them.

They told the subject to turn around and put his hands behind his back. He repeatedly refused to follow their commands. One of the police officers tased the subject and he fell to the ground. The officers again told him to put his hands behind his back and again he refused. The officers had to tase him an additional time to get him to place his hands behind his back and they put him in the car.

Once they put him in the car, he began to try to kick out the window. One officer went around to the other side of the car to sit him up straight up. Once he was sitting straight up, he began to take his head and ram it back from the backseat to the front seat, from the back windshield all the way to the plastic protective glass. It was shaking the whole car.

I heard the officers order another patrol car to follow them downtown in case they had a fight. Once they left, I left the scene.

I have read the above and foregoing affidavit consisting in total of two (3) pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

_Kenneth Bolling_
District Fire Chief Kenneth Bolling

**SWORN** to and **SUBSCRIBED** before me this the 6th day of November, **2006.**

_Vicky McHui_
Notary Public

My commission expires 10/16/09

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES A. PEARSON, #182691 | ) | |
| | ) | |
| Plaintiff, | ) | CV No. 2:06-CV-828-MEF |
| | ) | |
| ELLEN BROOKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF DON K. CORKRAN

STATE OF ALABAMA            )

COUNTY OF MONTGOMERY        )

Before me, a Notary Public in and for said State and County, personally appeared D.K. Corkran and, after first being duly sworn by me, did depose and state as follows:

My name is Don K. Corkran and I am over nineteen (19) years of age. I am currently employed as a Corporal in the Patrol Division of the Montgomery Police Department.

On the date of October 3, 2005, my unit #203, responded to the 600 block of Mildred Street to assist other officers in apprehending a subject. The subject was identified as Charles Anthony Pearson. Pearson continued to be aggressive and was ordered multiple times to place his hands behind his back. Pearson continuously refused and was told that if he did not comply he would be tased.

Sergeant E. L. Johnson attempted to place Pearson into custody but he snatched away from him. At this time I deployed my taser and fired it at Pearson striking him in his abdomen. Pearson fell to the ground and was again advised to place his hands behind his back. Again he refused, and I re-engaged Pearson with my taser. Pearson then complied and put his hands behind his back.

My partner, Officer Gary Reardon and I, attempted to place Pearson in our patrol vehicle. Pearson began to kick at us. As we attempted to place leg shackles on Pearson, he

DEFENDANT'S
EXHIBIT
4

tried to kick and spit on us. I then drive stunned Pearson in his left side in order to get him to comply while we placed shackles on him. He again tried to kick my partner and I drive stunned him a second time in the left side. We were then able to restrain him in the vehicle with shackles and handcuffs and transport him to the Detective Division at Headquarters.

While in route to headquarters, Pearson continually cursed and threatened my partner and I while slamming his head into the cage of our vehicle. I have attached to my affidavit a copy of the video from the camera inside of our patrol car of Pearson while in route to headquarters.

Additionally, I have attached to my affidavit a copy of the Montgomery Police Department's Taser Deployment Form that was completed due to the taser deployment on Pearson. I never intentionally tried to harm Pearson but rather reacted to Pearson in an effort to try to restore control to the situation.

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

_____
Corporal D.K. Corkran

**SWORN to and SUBSCRIBED before me this the** 3rd **day of November,** 2006.

_____
Notary Public

My commission expires 10/16/09

# Montgomery Police Department
Taser Deployment Form

Date / Time: 10/03/2005                    Taser Officers Name:D. K. Corkran #1141

On Scene Supervisor: Sgt. E. L. Johnson #367        Officer(s) Involved:1141

Nature of the Call or Incident: Assisting Detectives in apprehending a subject wanted for

Theft of Property 1st.t

Charges: Theft of Property 1st.                    In Jail: ☒ Yes ☐ No

Location of Incident: ☐ Indoor ☒Outdoor ☐ Jail ☐ Hospital ☒ Other: patrol vehicle

Force Used (check all that apply): ☒ Physical ☒ Less Lethal ☐ Chemical ☐ Firearm

Nature of injuries and Medical Treatment Required: None

Admitted to Hospital for Injuries? ☐ Yes ☒ No

Admitted to Hospital for Psychiatric? ☐ Yes ☒ No

Medical Exam? ☐ Yes ☒No        Suspect Under the Influence (Specify) alcohol

Incident Type: ☒ Civil Disturbance ☐ Suicidal ☐ Suicide by Cop ☒ Violent Suspect

☐ Domestic Violence ☐ Warrant ☐ Barricaded ☒ Other wanted for Theft of Property

1st.

Subjects Name / Address: Charles Anthony Pearson   537 Cobb Street

Age: 35      Sex: B Race: M  Height: 5'6  Weight: 280

Taser Use: ☒ Success ☐ Failure  Suspect Wearing Heavy Clothes ☐ Yes ☒ No

Number of Cartridges: 1            Number of Cycles: 4

Application Procedure: ☐ Arc Display Only ☐ Laser Display Only ☒ Full Taser

Is this a dart probe contact? ☒ Yes ☐ No  Is this a stun gun contact? ☒ Yes ☐ No

Approximate Distance at Probe Launch: 4 feet.

Distance between probes: 5 inches    Need for second shot? ☒ Yes ☐ No

Did probes penetrate skin? ☒ Yes ☐ No   Removed on Scene? ☒ Yes ☐ No

Taser use cause injury? ☒ Yes ☐ No        If yes, treated for injury? ☐ Yes ☒ No

Charles Anthony Pearson D.O.B. 11/24/69 of 537 Cobb Street and was found to have 3 capias warants and one Misdemeanor warrant for Unlawful Possession of Drug Paraphernalia.

Need for additional applications? ☒ Yes ☐ No

Device Results? ☒ Positive ☐ Negative

Describe the subject's demeanor after the device was used or displayed: After initial

deployment of the device the subject refused to comply until after the second

application. At that time we were able to place the subject into handcuffs. After placing

the subject into our vehicle he again became combative and he was Drive Stunned twice

in order to get him to comply.

OC Spray? ☐ Yes ☒ No    Baton or other instrument? ☐ Yes ☒ No

Authorized control holds? ☐ Yes ☒ No        If yes, type: n/a

Other means to control subject: subject was handcuffed and his legs were shackled

Photographs taken? ☒ Yes ☐ No

Report completed by: D. K. Corkran #1141        Signature: _____

Supervisor:Sgt. E. L. Johnson #367        Signature: _____

Puncture from
Probe







Defendant's
Exhibits - CD
maintained in file.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES A. PEARSON,  #182691** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CV No. 2:06-CV-828-MEF** |
| | ) | |
| **ELLEN BROOKS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF OFFICER GARY REARDON

**STATE OF ALABAMA**            )

**COUNTY OF MONTGOMERY**     )

Before me, a Notary Public in and for said State and County, personally appeared Gary Reardon and, after first being duly sworn by me, did depose and state as follows:

My name is Gary Reardon and I am over nineteen (19) years of age.  I am currently employed as an Officer with the Montgomery Police Department.  I am assigned to second shift in the patrol division.

On the date of October 3, 2005, my unit #203, responded to the 600 block of Mildred Street to assist other officers in apprehending a subject.  The subject was identified as Charles Anthony Pearson.  Pearson continued to be aggressive and was ordered multiple times to place his hands behind his back.  Pearson continuously refused and was told that if he did not comply he would be tased.

Sergeant E. L. Johnson attempted to place Pearson into custody but he snatched away from him.  At this time, my partner Corporal Corkran, deployed his taser and fired it at Pearson striking him in his abdomen.  Pearson fell to the ground and was again advised to place his hands behind his back.  Again he refused, and Corporal Corkran re-engaged Pearson with his taser.  Pearson then complied and put his hands behind his back.



DEFENDANT'S
EXHIBIT
5

As my partner and I attempted to place Pearson in our patrol vehicle, he began to kick at us. As we attempted to place leg shackles on Pearson he tried to kick and spit on us. Corporal Corkran then drive stunned Pearson in his left side in order to get him to comply while we placed shackles on him. He again tried to kick me, and Corporal Corkran drive stunned him a second time in the left side. We were then able to restrain him in the vehicle with shackles and handcuffs and transport him to the Detective Division at headquarters. While in route to headquarters, Pearson continually cursed and threatened my partner and I while slamming his head into the cage of our vehicle.

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

_____
Officer Gary Reardon

**SWORN to and SUBSCRIBED before me this the** 3rd **day of November, 2006.**

_____
Notary Public

My commission expires 10/16/09

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES A. PEARSON,  #182691          )
                                      )
        Plaintiff,                    )    CV No. 2:06-CV-828-MEF
                                      )
ELLEN BROOKS, et al.,                 )
                                      )
        Defendants.                   )

## AFFIDAVIT OF SERGEANT EVERETTE L. JOHNSON

STATE OF ALABAMA                  )

COUNTY OF MONTGOMERY       )

Before me, a Notary Public in and for said State and County, personally appeared Everette L. Johnson and, after first being duly sworn by me, did depose and state as follows:

My name is Everette L. Johnson and I am over nineteen (19) years of age.  I am currently employed as a Sergeant assigned to First Shift Patrol with the Montgomery Police Department.

On the date of October 3, 2005, a call came over the radio requesting a patrol unit at the 600 block of Mildred Street.  I was at the Montgomery Police Department's Training Academy and left in route to the call.  Upon arrival I confronted a black male (later identified as Charles Anthony Pearson) in order to detain him.

We asked Pearson multiple times to place his hands behind his back and warned him that if he did not comply he would be tased.  Pearson continuously refused and as we attempted to place him in custody, he snatched his arm away and attempted to strike me.  At this time Corporal D. K. Corkran deployed his taser.  Pearson fell to the ground and was again advised to place his hands behind his back, and again he refused.  Pearson had to be tased again, at which time we were able to place handcuffs on him.  Pearson was then escorted to the patrol vehicle.  As Corporal Corkran and Officer G. Reardon tried to place

DEFENDANT'S
EXHIBIT
6

him in the vehicle he became combative again.  Pearson had to be drive stunned in order to get him to stop struggling with the officers.  I had a unit follow Corporal Corkran and Officer Reardon to assist them in getting Pearson to the Detective Division.

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

_____
Sergeant Everette L. Johnson


**SWORN to and SUBSCRIBED before me this the** _10th_ **day of November, 2006.**

_____
Notary Public

My commission expires _10/16/09_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLES A. PEARSON, #182691 )
)
       **Plaintiff,** )    CV No. 2:06-CV-828-MEF
)
ELLEN BROOKS, et al., )
)
       **Defendants.** )

## AFFIDAVIT OF DETECTIVE BENJAMIN HARRISON

STATE OF ALABAMA      )

COUNTY OF MONTGOMERY   )

Before me, a Notary Public in and for said State and County, personally appeared Benjamin Harrison and, after first being duly sworn by me, did depose and state as follows:

My name is Benjamin Harrison and I am over nineteen (19) years of age. I am currently employed as a Detective with the Montgomery Police Department.

On October 3, 2005, I heard on my radio, patrol units being dispatched to the 600 block of Mildred Street to assist a Fire Department Officer. I proceeded to the scene and upon arrival I witnessed a black male being questioned by patrol officers and detectives.

The patrol officer asked for his identification and driver's license, at which time he advised he did not have any and began to become violent. He began yelling and beating on the rear trunk of the patrol vehicle. A large crowd subsequently gathered around us as this occurred and they were able to obtain personal information on the subject at this time. The subject was identified as Charles Anthony Pearson.

Pearson kept yelling that he was not going to jail and he would kill officers and no one was taking him to jail because he just got out of prison. The officers told Pearson that he had just exited the driver's seat of a stolen vehicle and would have to go to police



DEFENDANT'S EXHIBIT
7

headquarters.  Pearson then began beating on the trunk of the patrol car and yelling at officers.

Patrol officers from another unit responded.  The officers ordered Pearson to place his hands behind his back.  The officers continued to try to get Pearson to put his hands behind his back but he repeatedly refused.  Pearson then pulled away, at which time he was shot with a taser gun.  Pearson fell to the ground, but continued to resist.  He had to be tased again in order for him to comply and be taken into custody.

As the officers attempted to place him in the back of the patrol unit he began to kick and spit at them.  He was drive stunned a few times to get control of him to get his feet shackled and get him inside the patrol vehicle.  Once inside the patrol vehicle, he began banging his head against the cage of the car.

I radioed Sergeant Kevin Byrd and advised that we had a suspect in custody that was in possession of a stolen vehicle.  I informed him that the suspect was still irate and that they would be transporting him to the Detective Division.  I advised that they needed to have back up units at the Detective Division because Pearson was aggressive toward officers.

I have read the above and foregoing affidavit consisting in total of three (2) pages and state that it is true and correct to my present knowledge and information.

Further Affiant saith not.

Detective Benjamin Harrison

SWORN to and SUBSCRIBED before me this the 6 day of November, 2006.

Notary Public

My commission expires 10/16/09

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLES A. PEARSON, #182691      )
                                 )
    **Plaintiff,**              )      CV No. 2:06-CV-828-MEF
                                 )
ELLEN BROOKS, et al.,            )
                                 )
    **Defendants.**             )

## AFFIDAVIT OF SERGEANT KEVIN BYRD

STATE OF ALABAMA            )

COUNTY OF MONTGOMERY        )

    Before me, a Notary Public in and for said State and County, personally appeared Sergeant Kevin Byrd and, after first being duly sworn by me, did depose and state as follows:

    My name is Kevin Byrd and I am over nineteen (19) years of age. I am currently employed as a Sergeant with the Montgomery Police Department's Detective Division.

    On the date of October 3, 2005, at approximately 1540 hours, I was contacted by Corporal B.F. Harrison. Cpl. Harrison advised me that he had a suspect in custody that was in possession of a stolen vehicle. The suspect was later identified as Charles Anthony Pearson, Jr. Cpl. Harrison advised that Pearson resisted arrest and was tased by patrol officers on the scene. Also, Cpl. Harrison advised that the suspect was still irate and that they would be transporting him to the Detective Division.

    The patrol units arrived at the Detective Division with the suspect. Pearson was very irate, verbally abusive and screaming profanity at officers and would not calm down. Pearson was taken to the Detective Division where he continued to scream profanities at officers. The patrol supervisor advised that pictures needed to be taken of the area where Pearson had been tased. Pearson continued to be verbally abusive and he threatened the patrol officers. I kept trying to calm him down, but he continued to scream and yell

DEFENDANT'S
EXHIBIT
8

profanities toward the patrol officers.  At that time, I asked the patrol officers to step out of my office because his anger seemed to be directed at them and I was trying to calm him down.

The patrol officers stepped out of the office and Detective Gruhn came into the office to assist in getting the pictures.  I talked to Pearson in an attempt to get him to calm down but he continued to scream and yell profanities.  All of my efforts to calm him down failed.  I advised him that I needed to get pictures of where he was tased but he said he was not going to allow us to take any pictures.  I advised Pearson that we had to get the pictures.

At that time I pulled Pearson's shirt up and Detective Gruhn stepped in front of him to take the pictures.  When I pulled his shirt up he turned his head and bit down on my right middle finger and would not release his bite.  At that time I struck him in the left side of his head with my left forearm.  He released his bite from my finger and he began kicking toward Detective Gruhn.  He struck Detective Gruhn in his right knee.  Pearson was then taken to the floor until he calmed down.  When Pearson calmed down, several other officers escorted him to the city jail with a hold for detectives. I stayed in the Detective Division and did not escort him to the jail.  I never tased Pearson.   The reason I struck Pearson was to try to get him to release his bite from my finger.  I never intentionally tried to harm Pearson but rather reacted to Pearson in an effort to try to restore control to the situation.

I was not present when Pearson was taken into custody.  The first time I saw Pearson, on October 3, 2005, was when a patrol unit brought him into headquarters.  Pearson was aggressive and combative. Cpl. Harrison had contacted us and asked that we have back up units at headquarters when they brought him to the Detective Division because of Pearson's aggression toward the officers on the scene.

I have read the above and foregoing affidavit consisting in total of three (3) pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

_Sgt. K. R. Byrd #130_
Sgt. Kevin Byrd

**SWORN to and SUBSCRIBED before me this the** 2nd **day of November, 2006.**

Notary Public
My commission expires 10/14/09

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

CHARLES A. PEARSON, #182691 )
)
    Plaintiff, )   CV No. 2:06-CV-828-MEF
)
ELLEN BROOKS, et al., )
)
    Defendants. )

## AFFIDAVIT OF DETECTIVE CHRISTOPHER GRUHN

STATE OF ALABAMA      )
COUNTY OF MONTGOMERY  )

Before me, a Notary Public in and for said State and County, personally appeared Christopher Gruhn and after first being duly sworn by me did depose and state as follows:

My name is Christopher Gruhn and I am over nineteen (19) years of age. I am currently employed as a Detective with the Montgomery Police Department.

On October 3, 2005, I was in my office at Headquarters when patrol units arrived with a suspect in a Theft of Property in the First Degree case. The suspect was identified as Charles Anthony Pearson. I was not present when Pearson was taken into custody.

I could hear Pearson coming into the entrance to the Detective Division. Pearson was being very irate, verbally abusive and screaming profanity at officers. Pearson would not calm down. I came out of my office and went to assist Detective Byrd.

Pearson continued to be verbally abusive and threatened the patrol officers. Detective Byrd and I suggested that the patrol officers leave the office because Pearson's anger seemed to be directed at them. Detective Byrd attempted to talk to Pearson in an attempt to get him to calm down but he continued to scream and yell profanities. All of our efforts to calm him down failed.



We needed to get the pictures where Pearson had been tased by the patrol officers. At that time Detective Byrd pulled Pearson's shirt up and I stepped in front of him to take the pictures. When Detective Byrd pulled Pearson's shirt up, Pearson turned his head and bit down on Byrd's right middle finger and would not release his bite. At that time Detective Byrd struck Pearson in the left side of his head with his left forearm.

Pearson released his bite from Detective Byrd's finger and shoulder charged me and put me up against the door. I then pushed and hit at Pearson to try to get him off of me. At some point, Pearson kicked me in the right knee. Detective Byrd and I got Pearson to the floor. Other officers came into the office and removed Pearson. I had no further contact with him. I never tased Pearson nor did I ever call him any names or use any racial slurs toward him. I never intentionally tried to harm Pearson in any way.

Due to my injuries, medics responded and advised that I needed to go to the emergency room for further treatment. I had swelling and bruising in my right knee. I was advised by the doctors that I possibly had a contusion and sprained ligaments to my knee.

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

Detective Christopher Gruhn

SWORN to and SUBSCRIBED before me this the 6th day of November, 2006.

Notary Public
My commission expires 10/16/09