IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES A. PEARSON, | ) | |
| AIS # 182691, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv828-CSC |
| | ) | (WO) |
| K.L. BYRD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Charles A. Pearson ("Pearson"), claims that City of Montgomery Police Officers Kevin Byrd ("Byrd") and Christopher Gruhn ("Gruhn") used excessive force against him in violation of his constitutional rights. In addition, Pearson asserts that he was subjected to an unlawful arrest.

The defendants[1] filed a special report and supporting evidentiary materials addressing Pearson's claims. The court deems it appropriate to treat the special report as a motion for summary judgment.[2] Upon consideration of such motion, the evidentiary materials filed in support thereof, and the responses filed by Pearson, the court concludes that the motion for

---

[1] In his original complaint, the plaintiff named the Montgomery County District Attorney and an assistant District Attorney as defendants. They have been dismissed on immunity grounds.

[2] Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

summary judgment with respect to Pearson's unlawful arrest claim is due to be granted. The court further concludes that the motion for summary judgment with respect to Pearson's claim that Byrd and Gruhn used excessive force against him in the police station is due to be denied.

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiffs are required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). They must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.

1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III.  FACTS[3]

On October 3, 2005, Pearson borrowed a friend's car and went to the market. (Doc. 6, p. 1.) Along the way, he picked up a companion. (*Id.*) During the return trip home, the car stalled. (*Id.*) Pearson moved the car into a parking lot and asked his companion to contact a friend for assistance. (*Id.*) Pearson's companion then left the area. (*Id.*)

About the same time that Pearson's car trouble began, Officer Guy Naguin ("Officer Naguin") was conducting a separate investigation. (Doc. No. 14-3, p. 1.) While driving near the area where Pearson had moved the stalled car, Officer Naguin saw a brown four-door vehicle speeding down Day Street. (*Id.*) The driver of the vehicle was a black male and the passenger was a black female. (*Id.*) Officer Naguin also noticed that the female passenger was holding a beer can in her hand. (*Id.*) The brown car ran through the stop sign at the intersection of Day and Mobile Streets, sliding sideways with locked brakes. (*Id.*) The car then proceeded North onto Mobile Street and out of sight. (Id.) When Officer Naguin turned onto Mobile Street, he heard patrol units being dispatched to the 600 block of Mildred Street.

---

[3]The facts are recounted in a light most favorable to Pearson.

3

(*Id.*) Officer Naguin then drove to the intersection of Mobile and Mildred Streets, where he saw a brown car in a parking lot which appeared to be the same car he had previously seen traveling onto Mobile Street.

While Pearson waited in the parking lot for his friend to come with help, police officers drove into the parking lot, and one of the officers asked Pearson to approach his police car. (Doc. No. 6, p. 1.) Pearson complied with the officer's request. (*Id.*) The officer then informed Pearson that the stalled car was reported as stolen. (*Id.*, pp. 1-2.) When Pearson began explaining that he had borrowed the car from a friend and that he was unaware that the car was stolen, another police officer shoved him onto the vehicle. (*Id.*, p. 2.) At some point, several other officers arrived on the scene. The officers used Taser guns on Pearson, struck and choked him, and dragged him into the backseat of a police car. (*Id.*) Pearson did not resist and attempted to shield himself from the officers' attack. (*Id.*) After Pearson entered the police car, the officers shocked him with Taser guns, closed the car doors, and sped away from the gathering crowd of concerned citizens. (*Id.*)

Pearson was angry and disoriented. (*Id.*) He used profanity and banged his head on the plexiglass between the rear and front seats of the police vehicle. (*Id.*) Officer Benjamin Harrison radioed Byrd at the police station and informed him that officers were transporting "a suspect in custody that was in possession of a stolen vehicle," that the suspect was "still irate," and that he should "have back-up units at the Detective Division because Pearson was

aggressive toward officers." (Doc. No. 14-8, Def's Ex. 7, p. 2.)

At the police station, Pearson was escorted to an investigation room in handcuffs and shackles. (Doc. No. 6, p. 3.) When a patrol supervisor ordered that photographs should be taken of the area where Pearson had received shocks from the Taser gun, Pearson threatened that he would "get[] a lawyer on you all." (*Id*.; Doc. No. 14-9, Def's Ex. 8, p.1.) The officers began using racial expletives against Pearson. (Doc. No. 14-9.)

Around this time, Gruhn entered the room with a camera. (Def's Ex. 8, p. 2.) When Byrd lifted up Pearson's shirt and Gruhn stepped in front of him to take a photograph, Pearson turned his head and bit down on Byrd's middle finger.[4] (*Id*.; Doc. No. 6, p. 3.) Byrd then used his forearm to strike Pearson along the left side of his head. (Doc. No. 6, p. 3.) As Pearson fell to the ground, Byrd punched and kicked him. (*Id*.) Gruhn placed his foot on Pearson's neck and head and kicked him several times. (*Id*.) Byrd, Gruhn, and several other officers then struck and kicked Pearson. (*Id*.) As the officers dragged Pearson to his cell, they continually used their Taser guns and laughed at him. (*Id*.)

## IV. DISCUSSION

### A. Unlawful Arrest

Pearson asserts that police officers arrested him without probable cause in violation of the Fourth Amendment. The defendants deny that they arrested Pearson without probable

---

[4] In his response, Pearson does not deny that he bit Byrd's finger. (Doc. No. 31.)

cause and assert that they were not present at the time of Pearson's initial arrest.

In *Ortega v. Christian*, 85 F.3d 1521 (11th Cir. 1996), the Court set forth the following explanation of the law relating to probable cause to arrest without a warrant:

> A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990). An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest. *Marx*, 905 F.2d at 1505. Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense. *Marx,* 905 F.2d at 1505. Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Marx,* 905 F.2d at 1506 (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142 (1964)).

*Id.* at 1525. *See also United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000) ("Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.").

First, the undisputed facts show that Officers Byrd and Gruhn were not present during Pearson's initial arrest. Pearson was arrested only after officers learned that the vehicle Pearson admitted to driving was stolen. Thus, the arresting officers had reasonably trustworthy information that would cause a prudent person to believe that Pearson had

committed a crime.[5]   Therefore, the officers involved in the arrest had probable cause to arrest Pearson for theft of property.  Consequently, the motion for summary judgment with respect to this claim should be granted in favor of the defendants.

## B. The Use of Force

Pearson claims that Byrd and Gruhn are liable under the Eighth and Fourteenth Amendments for violating his right to be free from excessive force.  The defendants deny that they used excessive force against Pearson and maintain they are entitled to qualified immunity.[6]

When evaluating a claim of qualified immunity, the court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 197 (11th Cir. 2001).  Pearson alleges that, after he fell onto the floor while handcuffed and shackled, Byrd Gruhn, and several other officers

---

[5] In addition, Officer Naguin had observed a brown car, which he believed to be the same as Pearson's car, speeding through a stop sign with a passenger holding a beer can near the area. (Doc. No. 14-3, p. 1.) Montgomery Fire Department Chief Kenneth Bolling also noticed a strong smell of alcohol on the driver's breath. (Doc. No. 14-4, p.2.) Thus, the officers had reasonably trustworthy information to believe that Pearson had committed a criminal offense.

[6] It is undisputed that Byrd and Gruhn were not present during or in any way involved in the incidents of alleged abuse occurring prior to his arrival at the police station. Therefore, to the extent Pearson asserts that the defendants used excessive court during the course of his initial arrest in the parking lot, the defendants' motion for summary judgment is due to be granted. *See e.g. Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986) (Discussing personal participation as one way to show requisite causal connection necessary to establish a § 1983 claim).

struck and kicked him several times. (Doc. No. 6, p. 3.) In addition, he alleges that the officers dragged him to his cell and continually used their Taser guns while laughing at him. (*Id.*) Consequently, Pearson has alleged the deprivation of a constitutional right. *See Saucier v. Katz, supra.*

Next the court considers whether the right was clearly established. But first, the court must also determine the nature of the constitutional right involved. While the facts indicate that Pearson had already been "'seized' and, for all intents and purposes, arrested at the time of the alleged abuses," it is clear that he had not yet acquired the status of a pretrial detainee. *See Calhoun v. Thomas*, 360 F.Supp.2d 1264, 1271-72 (M.D. Ala. 2005). Pearson was not under a formal arrest at the time the alleged use of force occurred and had yet to be booked into the Montgomery County Jail. In addition, he had not made an initial appearance before a judge. Thus, the alleged application of excessive force in this case occurred while Pearson was in a "legal twilight zone." *Calhoun, supra.* An analysis under the Fourth Amendment is appropriate in post-seizure, pre-detention allegations of excessive force. *Id.* at 1274. Consequently, the Fourth Amendment is the specific constitutional right allegedly infringed by the challenged application of force in this case. *Id*. *See also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (analyzing plaintiff's claim that she was subjected to the use of excessive force during a ride to the jail under the Fourth Amendment).

The Fourth Amendment's freedom from unreasonable searches and seizures

encompasses the right to be free from the use of excessive force. *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989). To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001). The court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

When balancing the necessity of using some force against an individual's constitutional rights, a variety of factors are considered, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Thus, the force used by a police officer "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

The defendants deny that they kicked Pearson and used Taser guns while dragging him into a cell. The defendants do admit that they used some force which they contend was necessary because Pearson was a danger to the officers. Specifically, Gruhn alleges that, after Pearson stopped biting Byrd's finger, Pearson "shoulder charged" him and kicked him

in the knee. Gruhn maintains that he pushed and hit Pearson in an effort to "try to get him off of [him]." (Doc. No. 14-10, Def's Ex. 9, p. 2.) Both Byrd and Gruhn assert that, after the biting and kicking incident, they placed Pearson onto the floor until he grew calm. Thus, there is a factual dispute concerning whether there was a need to use force and whether the force used was excessive under the circumstances.

In determining whether qualified immunity bars the plaintiff's claim, "[this court] does not look at the subjective intent of the officers." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002). Rather, "the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Pearson alleges that, after he fell to the ground in handcuffs and shackles, Byrd and Gruhn repeatedly kicked him and that several officers, including Byrd and Gruhn, used Tasers and laughed at him while dragging him into a cell. If the facts are as alleged by Pearson, then his excessive force claim falls within the narrow category of cases in which the unlawfulness of the conduct is readily apparent. *See Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997). At this juncture, therefore, the disputed issues of fact prevent the court from determining whether the defendants are protected by qualified immunity, an issue which the defendants may raise at the appropriate time at trial. *Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002); *Cottrell v. Caldwell*, 85 F.3d 1480, 1487-88 (11th Cir.1996). Thus, the motion for

summary judgment with respect to the Fourth Amendment claim against Byrd and Gruhn should be denied.

## V. CONCLUSION

Accordingly, it is ORDERED as follows:

1. The motion for summary judgment with respect to the unlawful arrest claim against the defendants be and are hereby GRANTED. (Doc. No. 14.)

2. The motion for summary judgment with respect to the plaintiff's claims that the defendants used excessive force against him at the police station be and are hereby DENIED. (Doc. No. 14.) It is further

ORDERED as follows:

1. That this case be set for jury selection and trial on September 24, 2007, at 10:00 a.m. in Courtroom 4B, United States Courthouse Complex, One Church Street, Montgomery, Alabama.

2. WITNESSES.

   (a) <u>All</u> parties shall file a witness list at least 20 days before the trial. Witnesses not on the list will not be heard.

   (b) *Cases Proceeding In Forma Pauperis.* If the plaintiff desires to procure attendance of witnesses by writ or subpoena, he shall file and serve – not later than 20 days before trial – a witness list containing the names, AIS number where applicable and

addresses of *all* witnesses – whether a subpoena is sought or not – (inmate or civilian status) and a brief statement of the expected testimony of each witness, whether a subpoena is sought or not. M.D. ALA. LR 45.1(b). The plaintiff should be specific in stating the witnesses' expected testimony, because if their testimony is not material or is simply repetitive the court may in its discretion decline to order the subpoena of the witness. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).

Whether the witness is subpoenaed by a pauper or not, Rule 45(c) requires that your subpoena must be accompanied by an attendance fee ($40.00 per day), a subsistence fee ($99.00 per day) if overnight stay is required, and actual expenses of a common carrier or mileage (44.5¢ per mile each way), or it need not be obeyed. The witness will be so informed by the subpoena. It is the responsibility of the party requesting the subpoena to provide that money to the clerk's office for tender with the subpoena.

(c) *Subpoena by Non-Paupers*. Subpoenas may be served in accordance with FED.R.CIV.P. 45(b). If service by the United States Marshal is requested, the subpoena must be filed not less than 14 calendar days prior to the date of the trial and must contain the complete name and address of the witness. M.D. ALA. LR(a)(1).

4. That a pretrial conference by phone conference be and is hereby set for August 22, 2007, at 9:00 a.m. The defendants shall set up the phone conference. The persons having custody of the plaintiff shall make him available for this phone conference. It is not

necessary to prepare a proposed pretrial order.

     5. *Production of Plaintiff*.  The persons having custody of the plaintiff shall produce the plaintiff for jury selection and trial.

     Done this 7th day of May, 2007.

                     /s/Charles S. Coody
                CHARLES S. COODY
                CHIEF UNITED STATES MAGISTRATE JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

  (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

  (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

  (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

  (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

  (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).