IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES A. PEARSON, | ) | |
| AIS # 182691, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv828-CSC |
| | ) | (WO) |
| K.L. BYRD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

In September 2006, Charles A. Pearson ("Pearson"), filed a 42 U.S.C. § 1983 action against District Attorney Ellen Brooks, Deputy District Attorney Scott Green, Montgomery Police Officers Kevin Byrd ("Byrd")and Christopher Gruhn ("Gruhn"), and the Montgomery County Circuit Court. On September 20, 2006, this court entered a Recommendation that the claims against Brooks, Green, and the Montgomery County Circuit Court be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). On November 6, 2006, Byrd and Gruhn filed a special report and answer. (Doc. No. 14.)

On November 29, 2006, Pearson filed a motion for an extension of time to file a response and a motion to join additional defendants. (Doc. Nos. 17, 18, & 19.) This court granted Pearson's motions, allowing Pearson to name Don Corkran ("Corkran"), Gary Reardon ("Reardon"), and Benjamin Harrison ("Harrison") as defendants in this case. (Doc. No. 20.) On January 9, 2007, Corkran, Reardon, and Harrison submitted a special report and

answer, in which they assert that, under the circumstances, the use of force against Pearson was not excessive and that they are entitled to qualified immunity because they were acting within their discretionary authority as police officers when the incident in the parking lot occurred.  (*Id*.)

On May 7, 2007, this court entered an opinion, granting the defendants' motion for summary judgment with respect to the unlawful arrest claim and denying the motion with respect to Pearson's claims of excessive force against Byrd and Gruhn.  (Doc. No. 35.)  The court, however, did not discuss Pearson's excessive force claims against Corkran, Reardon, and Harrison.  (*Id*.)

The court deems it appropriate to treat the defendants' January 9, 2007, special report as a motion for summary judgment.[1]  (Doc. No. 24.)  Upon consideration of such motion, the evidentiary materials filed in support thereof, and the responses filed by Pearson, the court concludes that the motion for summary judgment with respect to Pearson's claim that Corkran, Reardon, and Harrison used excessive force against him in the parking lot is due to be denied.  The court further concludes that, to the extent Pearson asserts that Corkran, Reardon, and Harrison subjected him to an unlawful arrest, the motion for summary judgment is due to be granted.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiffs are required to produce some evidence supporting his constitutional claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  They must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## III. FACTS

This court summarized Pearson's version of the facts in its May 7, 2007, opinion, in pertinent part, as follows:

> On October 3, 2005, Pearson borrowed a friend's car and went to the market. (Doc. 6, p. 1.)  Along the way, he picked up a companion.  (*Id.*)  During the return trip home, the car stalled. (*Id.*)  Pearson moved the car into a parking lot and asked his companion to contact his friend for assistance.  (*Id.*)  Pearson's companion then left the area.  (*Id.*)

> Around the time that Pearson's car trouble began, Officer Guy Naguin ("Officer Naguin") was conducting a separate investigation. (Doc. No. 14-3, p. 1.) While driving near the area where Pearson had moved the stalled car, Officer Naguin observed a brown four-door vehicle speeding down Day Street. (*Id.*)  The driver of the vehicle was a black male and the passenger was a black female.  (*Id.*) Officer Naguin also noticed that the female passenger was holding a beer can in her hand. (*Id.*) The brown car ran through the stop sign at the intersection of Day and Mobile Streets, sliding sideways with locked brakes. (*Id.*) The car then proceeded North onto Mobile Street and out of sight.  (Id.) When Officer Naguin turned onto Mobile Street, he heard patrol units being dispatched to the 600 block of Mildred Street.  (*Id.*)     Officer Naguin then drove to the intersection of Mobile and Mildred Streets, where he observed a brown car in a parking lot which appeared to be the same car he had previously seen traveling onto Mobile Street.

> While Pearson waited in the parking lot for his friend to come with help, police officers drove into the parking lot, and one of the officers asked Pearson to approach his police car. (Doc. No. 6, p. 1.)  Pearson complied with the officer's request. (*Id.*)  The officer then informed Pearson that the car was reported as stolen.  (*Id.*, pp. 1-2.)  When Pearson began explaining that he had borrowed the car from a friend and that

4

he was unaware that the car was stolen, another police officer shoved him onto the vehicle. (*Id*., p. 2.) At some point, several other officers arrived on the scene. The officers used Taser guns on Pearson, struck and choked him, and dragged him into the backseat of a police car. (*Id*.) Pearson did not resist and attempted to shield himself from the officers' attack. (*Id*.) After Pearson entered the police car, the officers shocked him with Taser guns, closed the car doors, and sped away from the gathering crowd of concerned citizens. (*Id*.)

(Doc. No. 35, pp. 3-4.)

## IV. DISCUSSION

### A. Unlawful Arrest

To the extent Pearson asserts that Corkran, Reardon, and Harrison arrested him without probable cause in violation of the Fourth Amendment, the court concludes that the defendants' motion for summary judgment is due to be granted.

In *Ortega v. Christian*, 85 F.3d 1521 (11th Cir. 1996), the Court set forth the following explanation of the law relating to probable cause to arrest without a warrant:

> A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990). An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest. *Marx*, 905 F.2d at 1505. Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense. *Marx,* 905 F.2d at 1505. Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy

5

> information." *Marx,* 905 F.2d at 1506 (citing *Beck v. Ohio*, 379
> U.S. 89, 91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142 (1964)).

*Id.* at 1525. *See also United States v. Gordon*, 231 F.3d 750, 758 (11ᵗʰ Cir. 2000) ("Probable

cause to arrest exists when law enforcement officials have facts and circumstances within

their knowledge sufficient to warrant a reasonable belief that the suspect had committed or

was committing a crime.").

The undisputed facts establish that Pearson was arrested only after officers were

informed that the vehicle Pearson admitted to driving was stolen. Based on those facts, the

arresting officers had reasonably trustworthy information that would cause a prudent person

to believe that Pearson had committed a crime.[2]  Therefore, the officers had probable cause

to arrest Pearson for theft of property. Consequently, the motion for summary judgment with

respect to this claim should be granted in favor of the defendants.

## B.  The Use of Force

Pearson claims that Corkran, Reardon, and Harrison violated his right to be free from

excessive force. The defendants deny that they used excessive force against Pearson and

---

[2] In addition, Officer Naguin had observed a brown car, which he believed to be the same as Pearson's car, speeding through a stop sign with a passenger holding a beer can near the area. (Doc. No. 14-3, p. 1.) Montgomery Fire Department Chief Kenneth Bolling also noticed a strong smell of alcohol on the driver's breath. (Doc. No. 14-4, p.2.) Thus, the officers had reasonably trustworthy information to believe that Pearson had committed a criminal offense.

maintain they are entitled to qualified immunity.[3]

When evaluating a claim of qualified immunity, the court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 197 (11th Cir. 2001). While the facts indicate that Pearson had already been "'seized' and, for all intents and purposes, arrested at the time of the alleged abuses," it is clear that he had not yet acquired the status of a pretrial detainee. *See Calhoun v. Thomas*, 360 F.Supp.2d 1264, 1271-72 (M.D. Ala. 2005). Pearson was not under a formal arrest at the time the alleged use of force occurred and had yet to be booked into the Montgomery County Jail. In addition, he had not made an initial appearance before a judge. Thus, the alleged application of excessive force in this case occurred while Pearson was in a "legal twilight zone." *Calhoun, supra.* An analysis under the Fourth Amendment is appropriate in post-seizure, pre-detention allegations of excessive force. *Id.* at 1274. Consequently, the Fourth Amendment is the specific constitutional right allegedly infringed by the challenged application of force in this case. *Id. See also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (analyzing plaintiff's claim that she was subjected to the use of

---

[3] Pearson does present any material issues of fact demonstrating that Corkran, Reardon, or Harrison were in any way involved in the incidents of abuse occurring at the police station. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) Therefore, to the extent Pearson asserts that the defendants used excessive court at the police station, the defendants' motion for summary judgment is due to be granted.

excessive force during a ride to the jail under the Fourth Amendment).

The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force. *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989). To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001). The court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

When balancing the necessity of using some force against an individual's constitutional rights, a variety of factors are considered, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Thus, the force used by a police officer "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

Pearson alleges that a police officer shoved him onto a patrol car and shocked him with a Taser gun and that two other officers handcuffed and shackled him. Pearson further

8

alleges that, although he did not resist, one of the officers continued to use the Taser gun on him. He maintains that these officers then threw him into the back of the police vehicle, and that one of the officers choked and punched him while another officer shocked him with the Taser gun. Consequently, Pearson has alleged the deprivation of a constitutional right. *See Saucier v. Katz, supra.*

The defendants admit that they used some force against Pearson. The defendants, however, assert that the use of force was necessary because Pearson was a danger to the officers and nearby citizens. Specifically, the defendants allege that Pearson acted aggressively toward them, that he did not heed their warnings that he would be "tased" if he continued to resist, and that he repeatedly refused to comply with their orders. (Corkran's Affid.; Reardon's Affid.; Harrison's Affid.) Thus, there is a factual dispute concerning whether there was a need to use force and whether the force used was excessive under the circumstances.

The court must also determine whether the officers' alleged actions violated clearly established constitutional law. *See Saucier*, *supra*. In determining whether qualified immunity bars the plaintiff's claim, "[this court] does not look at the subjective intent of the officers." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002). Rather, "the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier*, 533 U.S. at 202.  Pearson alleges that, after he complied with the officers' orders and did not resist, the defendants handcuffed, shackled, and held him down while Corkran repeatedly used a Taser gun on him.  If the facts asserted by Pearson turn out to be what actually happened, then Pearson's excessive force claim would fall within the narrow category of cases in which the unlawfulness of the conduct is readily apparent.  *See Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997).  Given the dispute about what happened, the court cannot conclude that qualified immunity bars the plaintiff's excessive force claim against Corkran, Reardon, and Harrison at this time.  Of course, at the trial of this case the court will revisit the issue in accordance with *Cottrell v. Caldwell*, 85 F.3d 1480, 1487-88 (11th Cir.1996). The motion for summary judgment with respect to the Fourth Amendment claim against Corkran, Reardon, and Harrison should be denied.

## V.  CONCLUSION

Accordingly, it is ORDERED as follows:

1.    The motion for summary judgment with respect to the unlawful arrest claim against the defendants be GRANTED.  (Doc. No. 24.)

2.    To the extent the plaintiff claims that the defendants used excessive force against him in the parking lot, the motion for summary judgment be DENIED. (Doc. No. 24.)

3.    The motion for summary judgment with respect to the remaining claims be

GRANTED.  (Doc. No. 24.)

Done this 20th day of November, 2007.


                    /s/Charles S. Coody
          CHARLES S. COODY
          CHIEF UNITED STATES MAGISTRATE JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

    *Rev.: 4/04*

2.    <u>**Time for Filing**</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>**Format of the notice of appeal:**</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>**Effect of a notice of appeal:**</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).